**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| JASON DENT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.  12-0420  (EGS) |
| ) | |
| EXECUTIVE OFFICE FOR UNITED ) | |
| STATES ATTORNEYS, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, seeking disclosure of records maintained by three components of the United States Department of Justice ("DOJ"): the Executive Office for United States Attorneys ("EOUSA"), the Federal Bureau of Investigation ("FBI"), and the Federal Bureau of Prisons ("BOP").  Now before the Court are the parties' cross-motions for summary judgment.  Plaintiff's motions will be denied and defendant's motion will be granted in part and denied in part without prejudice.

## I.  BACKGROUND

### A.  *Request to the EOUSA (No. 07-1897)*

Plaintiff sought information maintained by the United States Attorney's Office for the Eastern District of New York about himself.  *See* Defs.' Mot. to Dismiss, or Alternatively, for Summ. J. ("Defs.' Mem."), Decl. of David Luczynski ("Luczynski Decl.") ¶ 4.  The EOUSA determined that "a complete search [for responsive records would] take . . . fifty-one hours"

1

beyond the two hours of search time afforded to a requester and estimated a fee of $1,428 to conduct the search. Compl., Ex. (Letter to plaintiff from William G. Stewart II, Assistant Director, Freedom of Information & Privacy Staff, EOUSA, dated March 6, 2008). "In light of the pending fee, plaintiff reformulated and attempted to narrow down his request by restricting the search for information regarding Grand Jury indictment, investigative reports, and information concerning third party individuals." Luczynski Decl. ¶ 7. However, because plaintiff neither paid nor made arrangements to pay the search fees, *id.*, the EOUSA took no further action, *see id.* ¶ 9.

### B.  Request to the FBI (FOIPA No. 1092003-000)

From the FBI's New York Field Office ("NYFO"), plaintiff requested "records . . . pertaining to the investigation and prosecution of Criminal Indictment No. 01-CR-1343 (E.D.N.Y.)." Defs.' Mem., Decl. of David M. Hardy ("Hardy Decl."), Ex. A (Letter to FBI's New York Field Office from plaintiff dated August 8, 2007) at 1. In subsequent correspondence, plaintiff requested Case File #166E-NY-277771 which pertained to the homicides of Ramel Flower and Theodore Burkowski. Hardy Decl., Ex. C (Letter to FBI NYFO from plaintiff dated September 4, 2007) at 2. The FBI located approximately 810 pages of potentially responsive records, and estimated duplication fees totaling $71.00 if all the pages were released. *Id.* ¶ 10; *see id.*, Ex. E (Letter to plaintiff from David M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, FBI, dated November 27, 2007). The FBI reviewed 195 pages of records and released 100 of these pages at no charge to plaintiff after having redacted information under Exemptions 2, 6, 7(C) and 7(D). *Id.* ¶¶ 16-17. Subsequently, after plaintiff filed this lawsuit, the FBI reopened plaintiff's request, processed an additional 108 pages of records, *id.* ¶ 29, "from a multi-subject file" but limited its focus to "only the pages that

specifically mention [plaintiff] as the subject." *Id.* ¶ 19.  At no cost to plaintiff, the FBI released

87 pages of records after having redacted information under Exemptions 3, 5, 6, 7(C), 7(D) and

7(E).  *Id.* ¶¶ 20-21.

### C.  Request to the BOP (No. 2008-07087)

According to plaintiff, he submitted a FOIA request to the BOP yet received no response.

Compl. at 5.  Apparently BOP staff declined to process the request unless and until plaintiff

"provide[d] a more specific description (dates and times) of the records [he is] seeking." *Id.*, Ex.

(Letter to plaintiff from Henry J. Sadowski, Regional Counsel, Northeast Regional Office, BOP,

dated September 22, 2008).

## II.  DISCUSSION

### A.  Summary Judgment in a FOIA Case

"FOIA cases typically and appropriately are decided on motions for summary judgment."

*Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  The Court

grants summary judgment if the movant shows that there is no genuine dispute as to any material

fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In a FOIA action

to compel production of agency records, the agency "is entitled to summary judgment if no

material facts are in dispute and if it demonstrates 'that each document that falls within the class

requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection

requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001)

(quoting *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978)).  Summary

judgment may be based solely on information provided in an agency's supporting affidavits or

declarations if they are relatively detailed and when they describe "the documents and the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

## B. Exhaustion of Administrative Remedies

"Exhaustion of administrative remedies is generally required before seeking judicial review" under the FOIA. *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam). Exhaustion allows "the agency [] an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Id.* (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). It is not a jurisdictional requirement, *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003), but is instead a prudential consideration. *Wilbur*, 355 F.3d at 677. If a requester has not exhausted his administrative remedies prior to the filing of a civil action, his claim is subject to dismissal. *See Hidalgo*, 344 F.3d at 1258. A requester's "failure to comply with an agency's FOIA regulations is the equivalent of a failure to exhaust" administrative remedies. *West v. Jackson*, 448 F. Supp. 2d 207, 211 (D.D.C. 2006) (citations omitted). "Exhaustion [of administrative remedies] does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees." *Oglesby,* 920 F.2d at 66.

"[E]ach agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Regulations promulgated by the DOJ specify, among other things, "the schedule of fees applicable to the processing of requests." 5 U.S.C. § 552(a)(4)(A)(i); *see* 28 C.F.R. § 16.1 *et seq*. For purposes of these regulations, the term "component" means "each separate bureau, office, board, division, commission, service, or administration of the [DOJ]," 28 C.F.R. §

16.1(b), and the EOUSA, FBI and BOP are DOJ components.  *See* 28 C.F.R. § 0.1 (setting forth

DOJ's organizational units).  Requests submitted under the Privacy Act by individuals for

records about themselves are processed under these regulations also.  *See* 28 C.F.R. §§ 16.1(a),

16.40(a).

Generally, a DOJ component "shall charge for processing requests under the FOIA."  28

C.F.R. § 16.11(a).  By making a FOIA request, a requester is deemed to have agreed "to pay all

applicable fees charged under [28 C.F.R.] § 16.11, up to $25.00, unless [the requester] seek[s] a

waiver of fees."  28 C.F.R. § 16.3(c).  In addition, "[s]earch fees shall be charged . . . for time

spent searching even if [the component does] not locate any responsive record or if [it]

withhold[s] the record(s) located as entirely exempt from disclosure."  28 C.F.R. § 16.11(c)(1)(i).

"Duplication fees will be charged" at a cost to the requester of $.10 per page.  28 C.F.R. §

16.11(c)(2).  "Except for requesters seeking records for a commercial purpose, components will

provide without charge . . . [t]he first 100 pages of duplication . . . and . . . [t]he first two hours of

search . . . ."  28 C.F.R. § 16.11(d)(3).  A "component ordinarily shall collect all applicable fees

before sending copies of requested records to a requester."  28 C.F.R. § 16.11(a); *see* 5 U.S.C. §

552(a)(4)(A)(v) (authorizing advance payment of a fee if "the requester has previously failed to

pay fees in a timely fashion, or the agency has determined that the fee will exceed $250").  If "a

component determines or estimates that a total fee to be charged . . . will be more than $250.00,

it may require the requester to make an advance payment up to the amount of the entire

anticipated fee before beginning to process the request."  28 C.F.R. § 16.11(i)(2).  And where the

component "requires advance payment . . . , the request shall not be considered received and

further work will not be done on it until the required payment is received."  28 C.F.R. §

16.11(i)(4).

When the EOUSA acknowledged its receipt of plaintiff's FOIA request in writing, it reminded plaintiff that, "[b]y making a FOIA/PA request, [he had] agreed to pay fees up to $25." Luczynski Decl., Ex. A (Letter to plaintiff from W.G. Stewart II dated June 19, 2007).  Further, the EOUSA advised plaintiff when it had spent two hours searching for responsive records:

> Federal Regulation 28 CFR 16.11(i) provides that our office may collect an advance payment before we continue processing your request if we estimate search and or copy fees will exceed $250.00. Search time is $28.00 per hour, after the first two hours which are free.  The Eastern District of New York has informed us that a complete search will take an additional fifty-one hours.  Again, this excludes the first two hours which are provided free of charge. Therefore, the search fee would be approximately $1428.  The district has also indicated that [it has] more than 51 boxes pertaining to this multi-defendant case.  Normally a box contains between 2000 and 4000 pages of records.  We do not know at this time, prior to a complete search, how many responsive pages will be found.  Although not all of these records are likely to be released to you, we charge $.10 per page for pages released to you, after the first 100 pages which are free.  Please inform us whether you only want the free 100 pages or additional releasable records. Once processing has been completed and a final charge is known, you will be required to submit the remaining fee before documents will be released to you . . . .
>
> Per 28 C.F.R. 16.11(i), your request is not considered received until we receive a response from you . . . within 30 days of the date of this letter . . . .

*Id.*, Ex. C (Letter to plaintiff from W.G. Stewart II dated March 6, 2008) (emphasis removed).

Plaintiff responded to the EOUSA's notice by limiting his request to certain exhibits, including copies of all government exhibits and investigative reports, information pertaining to the guilty pleas of two individuals, and grand jury materials.  *Id.*, Ex. D (Letter from plaintiff dated March 9, 2008).  His response, however, did not mention fees.  *See id.*  Because it had not received the advance payment of $1,428, the EOUSA took no further action.  *Id.* ¶ 9.

The EOUSA argues that plaintiff failed to his exhaust administrative remedies because he failed to pay search fees in advance. *See generally* Defs.' Mem. at 4-7. Plaintiff first claims to have requested a waiver of fees. *See* Pl.'s Opp'n Mot. to Defs.' Mot. to Dismiss or for Summ. J. ("Pl.'s Opp'n") at 6; *see id.*, Ex. A. Second, he contends that he did exhaust administrative remedies as evidenced by the EOUSA's "no records" response to his request. *See id.* at 6-7. Notwithstanding the nonpayment of fees, the EOUSA apparently processed the request, and its "search for records in the United States Attorney's Office[] for the Eastern District of New York has revealed no responsive records" regarding plaintiff. *See id.*, Ex. B (Letter to plaintiff from W.G. Stewart II dated April 23, 2010). It is not clear that the EOUSA received or responded to plaintiff's request for a waiver of fees. Nor is it clear that plaintiff pursued an administrative appeal the EOUSA's "no records" determination.

Summary judgment is appropriate when the plaintiff has failed to comply with agency fee regulations, *see Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 555 F. Supp. 2d 16, 23 (D.D.C. 2008), and payment is required "[r]egardless of whether the plaintiff filed suit before or after receiving the request for payment." *Trueblood v. U.S. Dep't of the Treasury*, 943 F. Supp. 64, 68 (D.D.C. 1996) (internal quotation marks omitted). Nothing in the record of this case indicates that plaintiff paid search fees in advance, yet the EOUSA appears to have processed the request. Under these circumstances, the EOUSA's exhaustion argument is of no moment. Its supporting declaration is silent as to its search for records responsive to plaintiff's FOIA request, however, and the Court is unable to determine whether the EOUSA has fulfilled

its obligations under the FOIA.  Defendants' motion, therefore, will be denied in part without prejudice.[1]

## C.  The FBI's Response to Plaintiff's FOIA Request

### 1.  The FBI's Search for Responsive Records

"The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case."  *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted).  An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents."  *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted).  A search need not be exhaustive.  *See Miller v. U.S. Dep't of State,* 779 F.2d 1378, 1383 (8th Cir. 1995).  "The issue in a FOIA case is not whether the [agency's] searches uncovered responsive documents, but rather whether the searches were reasonable."  *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citations omitted).

To meet its burden, an agency may submit affidavits or declarations that explain in reasonable detail the scope and method of its search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA.  *Id.* at 127.  On the other hand, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is

---

[1]     The Court is no better able to determine whether the BOP has fulfilled its obligations under the FOIA.  In his complaint, plaintiff alleges that the BOP "improperly withheld records in response to [his] Freedom of Information Request," Compl. at 5, yet the defendants' memorandum fails to address this claim.  This, too, is a basis for denying defendants' motion in part.

not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

i.  The FBI's Central Records System

The FBI's Central Records System ("CRS") "enables the FBI to maintain information . . . acquired in the course of fulfilling its . . . law enforcement responsibilities."  Hardy Decl. ¶ 22. The CRS includes "administrative, applicant, criminal, personnel and other files compiled for law enforcement purposes," and "consists of a numerical sequence of files broken down [by] subject matter."  *Id.*  The subject matter of a CRS file "may relate to an individual, organization, company, publication, activity or foreign intelligence matter (or program)."  *Id.*  The FBI's headquarters office ("FBIHQ") maintains certain CRS records while FBI field offices maintain those CRS records "that are pertinent to specific field offices."  *Id.*  In order to search the CRS, "the FBI uses . . . the Automated Case Support System ('ACS')."  *Id.*

The ACS is "an internal computerized subsystem of the CRS," *id.* ¶ 23, which makes it possible to retrieve data from the CRS using alphabetically-arranged General Indices.  *Id.*  "The General Indices consist of index cards on various subject matters that are searched either manually or though the automated indices."  *Id.*  There are two categories of General Indices:

> (a) A "main" entry – A "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS.
>
> (b) A "reference" entry – A "reference" entry, sometimes called a "cross reference," is generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

*Id.*  A search of the General Indices "to locate records concerning a particular subject, such as Jason Dent, [is] made by searching the subject requested in the index."  *Id.* ¶ 24.

"The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases." *Id.* ¶ 26. The Investigative Case Management application "provides for the ability to open, assign, and close investigative and administrative cases [and to] set, assign, and track leads." *Id.* ¶ 26(a). Each new case is assigned a Universal Case File Number which is used by FBIHQ and all FBI field offices "that are conducting or assisting in the investigation." *Id.* The Electronic Case File application "serves as the central electronic repository for the FBI's official text-based documents." *Id.* ¶ 26(b). The Universal Index application provides "a complete subject/case index to all investigative and administrative cases." *Id.* ¶ 26(c). The FBI does not index every name in its files; individual FBI Special Agents assigned to an investigation decide whether "to index names other than subjects, suspects, and victims." *Id.* ¶ 27. Without an index "to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved," and the agency's files "would thus be merely archival in nature." *Id.* "[T]he General Indices to the CRS are the means by which the FBI can determine what retrievable information, if any, [it] may have in its CRS files on a particular subject matter <u>i.e.,</u> in this case, plaintiff, Jason Dent." *Id.*

## ii. The FBI's Search Yielded Responsive Records

The FBI searched the CRS' automated indices "to identify all potentially responsive main NYFO files indexed to Jason Dent, utilizing a four-way phonetic breakdown of the names, including any variations of the first or last name that sound like or are spelled differently than the names," as well as plaintiff's date of birth "to facilitate the identification of responsive records." Hardy Decl. ¶ 28. This search yielded "one responsive main NYFO file and four sub-files of the main file that were processed for release to plaintiff." *Id.* "The FBI has reviewed a total of 303

pages in response to plaintiff's NYFO request." *Id.* ¶ 32.  It withheld 116 pages in full (seven of which were determined to be duplicates), released 165 pages in part, and released 22 pages in full.  *Id.*

Of the records released, plaintiff deems them "useless due to disorganization, incompleteness and heavy redactions."  Pl.'s Opp'n at 7.  The FBI, however, is under no obligation to arrange responsive records in any particular order.  And plaintiff's mere "speculation as to the existence of additional records . . . does not render the search[] inadequate."  *Concepción v. FBI,* 606 F. Supp. 2d 14, 30 (D.D.C. 2009); *see Baker & Hostetler LLP v. U.S. Dep't of Commerce,* 473 F.3d 312, 318 (D.C. Cir. 2006) (finding the requester's "assertion that an adequate search would have yielded more documents is mere speculation" and affirming district court's decision that agency's search procedure was "reasonably calculated to generate responsive documents").  The Court concludes that the FBI's search for records responsive to plaintiff's FOIA request was reasonably calculated to locate the information plaintiff seeks.

## 2.  Exemptions Claimed by the FBI

### a.  Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not available in discovery, it may be withheld from FOIA requesters."  *Burka v. U.S. Dep't of Health & Human Servs.,* 87 F.3d 508, 516 (D.C. Cir. 1996) (internal quotation marks omitted); *Nat'l Labor Relations Bd. v.*

*Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975).  This exemption "is interpreted to encompass . . . three evidentiary privileges: the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege."  *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002) ; *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Educ.*, __ F. Supp. 2d __, __, 2012 WL 5907027, at *8 (D.D.C. Nov. 26, 2012) (citations omitted).

"The deliberative process privilege protects documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Loving v. Dep't of Defense*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8 (2001)) (internal quotation marks omitted).  It "shields only government 'materials which are both predecisional and deliberative.'"  *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)).  For example, the exemption "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

To show that a document is predecisional, the agency need not identify a specific final agency decision; it is sufficient to establish "what deliberative process is involved, and the role played by the documents at issue in the course of that process."  *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas*, 617 F.2d at 868).  A document is "deliberative" if it "makes recommendations or expresses opinions on legal or policy matters."  *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).  However, if "[a]

document . . . does nothing more than explain an existing policy [it] cannot be considered deliberative." *Public Citizen, Inc. v. OMB,* 598 F.3d 865, 876 (D.C. Cir. 2010). The deliberative process privilege is thought to "prevent injury to the quality of agency decisions." *Sears, Roebuck,* 421 U.S. at 151; *see Coastal States Gas*, 617 F. 2d at 866. Such protection encourages frank discussion of policy matters, prevents premature disclosure of proposed policies, and avoids public confusion that may result from disclosure of rationales that were not ultimately grounds for agency action. *See, e.g., Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).

Citing Exemption 5 and the deliberative process privilege, the FBI has withheld information from 30 pages of records. Hardy Decl. ¶ 39. One document, withheld in full, "is an unsigned draft Complaint" written by a Special Agent assigned to the NYFO concerning a third party individual. *Id.* Another document, also withheld in full, is "an unsigned draft Federal Grand Jury Superceding Indictment from the United States District Court for the Eastern District of New York, concerning plaintiff and co-defendants, collectively known as the 'Cream Team.'" *Id.* The declarant ably provides a description of the documents withheld but makes no effort to establish that the information withheld is either inter- or intra-agency, or that the information is predecisional and deliberative.

### b.  Exemption 7

#### i.  Law Enforcement Records

FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only

establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).  It is apparent not only from the nature of the FOIA request but also from the type and content of the documents produced by the FBI that the responsive records were compiled for law enforcement purposes.

The FBI's declarant explains that "[d]ocuments responsive to plaintiff's request relate to the FBI's . . . criminal investigation of plaintiff and the 'Cream Team' related to gang and drug activity, and murder."  Hardy Decl. ¶ 41.  Plaintiff has been "convicted of conspiring to distribute and possess with intent to distribute fifty or more grams of crack cocaine, . . . engaging in [a] narcotics conspiracy resulting in murder, . . . engaging in narcotics conspiracy while engaging in a conspiracy to murder, . . . and using a firearm in relation to a drug trafficking offense and during a crime of violence . . . .," for which he is serving prison term of more than 360 months.  *Id.*

ii.  Exemption 7(C)[2]

FOIA Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552 (b)(7)(C).  "In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), [the Court] must balance the public

---

[2]     It is the FBI's practice to assert Exemption 6 in conjunction with Exemption 7(C) to withhold information in law enforcement records pertaining to third parties.  Hardy Decl. ¶ 42 n.2.  Because this information properly is withheld under Exemption 7(C) alone, the Court need not determine the applicability of Exemption 6 with respect to this same information.  *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011); *Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

interest in disclosure against the [privacy] interest Congress intended the Exemption to protect."

*ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) (internal quotation marks and

citation omitted); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007); *Beck v.*

*U.S. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).  When balancing the private interest

against the public interest in disclosure, "the only public interest relevant for purposes of

Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their

government is up to.'"  *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992)

(quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773

(1989)); *see also Sussman*, 494 F.3d at 1115.  It is a FOIA requester's obligation to articulate a

public interest sufficient to outweigh an individual's privacy interest, and the public interest must

be significant.  *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

Under Exemption 7(C), the FBI withholds "the names of and/or identifying information

of FBI [Special Agents ('SAs')] and support personnel who were responsible for conducting,

supervising, and/or maintaining the investigative activities reported in the documents responsive

to plaintiff's request."  Hardy Decl. ¶ 45.  The declarant explains that "FBI SAs conduct official

inquiries into violations of various criminal statutes and national security cases," and in the

course of these duties "[t]hey come into contact with all strata of society" by, for example,

"conducting searches and making arrests, both of which result in reasonable but nonetheless

serious disturbances" in the lives of individuals "targeted by such law enforcement actions."  *Id.*

Such an individual might "carry a grudge which may last for years," and may "seek revenge on

the agents involved in a particular investigation."  *Id.*  Disclosure of the agents' identities in

connection with a "particular investigation to which they have been assigned may seriously

prejudice their effectiveness in conducting other investigations," and may subject them, "as

15

individuals, [to] unnecessary questioning as to the course of an investigation, whether or not they are currently employed by the FBI." *Id.* ¶ 44.  Similarly, FBI support personnel "were assigned to handle tasks related to the official investigation into plaintiff['s activities], and "were, and possibly are, in a position to access information regarding official law enforcement investigations, and therefore could become targets of harassing inquires for unauthorized access to investigations if their identities were released." *Id.* ¶ 46.  The same rationale is applied to non-FBI federal government personnel, *id.* ¶ 50, and city, local, and state government employees, *id.* ¶ 53, whose names and identifying information appear in the responsive records.

With respect to third parties of investigative interest, *id.* ¶ 47, those who provided information to the FBI, *id.* ¶ 48, and those merely mentioned in the responsive records, *id.* ¶ 52, the FBI's declarant explains that disclosure of their identities in connection with a criminal investigation could subject them to harassment, embarrassment, undue public attention, *id.* ¶ 47, or to threats, intimidation, *id.* ¶ 49, or other forms of reprisal, *see id.* ¶¶ 49, 52.  The FBI identifies no public interest to outweigh these third parties' privacy interests.  *Id.* ¶ 43; *see id.* ¶¶ 45-46, 49-53.

Plaintiff asserts that the FBI "is not properly using" the exemption.  Pl.'s Opp'n at 8. "[D]uring trial [he] was given . . . material . . . provided . . . by the Government," and he is able to identify "New York City Police Department statements . . . turned over to the F.B.I.," and to name the individual who provided each statement.  *Id.* at 8-9.  He argues that the FBI now is asserting an exemption it "well know[s] do[es] not apply in this case." *Id.* at 8.  Plaintiff is mistaken.  The privacy interest at stake belongs to the individual, not the government agency, *see Reporters Comm.,* 489 U.S. at 763-65, and "individuals have a strong interest in not being

associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). For example, a third party may testify in open court and maintain an interest in his personal privacy. *See, e.g., Jones v. FBI*, 41 F.3d 238, 247 (6th Cir. 1994). And he maintains an interest in his personal privacy even if the requester already knows, or is able to guess, his identity. *See Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

### iii. Exemption 7(D)

Exemption 7(D) protects from disclosure records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). There is no general "presumption that a source is confidential within the meaning of Exemption 7(D) whenever [a] source provides information [to a law enforcement agency] in the course of a criminal investigation." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993). Rather, a source's confidentiality must be determined on a case-by-case basis. *Id*. at 179-80. "A source is confidential within the meaning of [E]xemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal quotation marks and citation omitted). Notwithstanding plaintiff's challenge to the FBI's reliance on Exemption 7(D) on the ground that, during his criminal trial, he "was given . . . material with the names of the people [the FBI now] claim[s] are confidential sources," Mot. for Summ. J. at 5, the Court concludes that information properly is withheld

under implied and express assurances of confidentiality.  Even if the identity of or information

provided by a source had been disclosed at trial, for example, a government agency still invokes

Exemption 7(D) to protect the source's identity.  *See Davis,* 968 F.2d at 1281 ("Even when the

source testifies in open court, as did the informant in this case, he does not thereby waive the

[government's] right to invoke Exemption 7(D) to withhold . . . information furnished by a

confidential source not actually revealed in public.") (citation and internal quotation marks

omitted) (brackets in original).

Implied Assurance of Confidentiality

In this case, the FBI withholds "portions of interviews in which the release of information

could clearly identify the sources."  Hardy Decl. ¶ 58.  According to the declarant, "[t]hese

sources provided valuable information that is detailed and singular in nature," and disclosure of

their identities "is in direct contradiction to the interests of the FBI."  *Id.* (emphasis removed).

Specifically, if the FBI were forced to disclose the identities of its sources, "such disclosure

would have a chilling effect on the . . . cooperation of [these] and other future FBI confidential

sources."  *Id.*

The nature of the crime investigated and informant's relation to it are the most important

factors in determining whether implied confidentiality exists.  *Landano*, 508 U.S. at 179-80;

*Coleman v. FBI*, 13 F. Supp. 2d 75, 82 (D.D.C. 1998) (finding that plaintiff's conviction "of

numerous violent crimes" including murder, rape and kidnaping, as well as "the relation of the

witnesses thereto is precisely the type that the implied confidentiality exemption expressed in

*Landano* is designed to encompass").  The declarant has explained that the records at issue were

generated in the course of the "criminal investigation of plaintiff and the 'Cream Team' related

to gang and drug activity, and murder," Hardy Decl. ¶ 41, and it is apparent that these sources

were close enough to these activities to provide "detailed and singular" information about them. *Id.* ¶ 58.  The Court accepts the declarant's representations that "[t]he sensitivity of the information, and the position of the sources, are such that it may be inferred that the information was provided with the expectation of confidentiality." *Id.*

Express Assurance of Confidentiality

Where a law enforcement agency relies on express assurances of confidentiality to justify its decision to withhold information under Exemption 7(D), it must offer "probative evidence that the source did in fact receive an express grant of confidentiality." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998) (quoting *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1061 (3d Cir. 1995)).  Such evidence may take many forms, such as notations on the face of the withheld document, an official's personal knowledge about the source, a statement from the source, or documents discussing practices or policies for dealing with the source at issue or similarly situated sources.  *Id.*

Here, the FBI withholds "the name, identifying data and information provided by several individuals" who "assisted in the criminal investigation of plaintiff and the 'Cream Team' conducted by the FBI and the New York Police Department with an 'express' assurance of confidentiality . . . evidenced by the words 'PROTECT IDENTITY'" where each individual's name appears in the file.  Hardy Decl. ¶ 59.  The Court concurs that these "words are a positive indication of an express assurance of confidentiality," and accepts the declarant's assertion that "[a]ll of the individuals would reasonably fear that disclosure of their identity [sic] would place them in danger." *Id.*  Moreover, as the declarant explains, "[i]f the FBI were to disclose the identities of confidential sources that entered into express agreements, the revelation would have

19

a chilling effect on the activities and cooperation of other FBI confidential sources in the future."

*Id.*

Local Grand Jury Testimony

The FBI withholds under Exemption 7(D) "the names, identifying data and information of individuals . . . subpoenaed to testify during a local grand jury" and "information that identifies specific records subpoenaed by the local Grand Jury."  Hardy Decl. ¶ 60.  Disclosure of such information, the declarant asserts, "would clearly violate the secrecy of the grand jury proceedings and could reveal the inner workings of the local grand jury that considered the case which was used during the FBI investigation."  *Id.*  Missing from the declaration, however, is any indication that the information withheld pertains to the identity of or information provided by a confidential source.  The Court, therefore, is unable to determine whether Exemption 7(D) applies to this local grand jury information.

iv.  Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  "The first clause of Exemption 7(E) affords 'categorical' protection for 'techniques and procedures' used in law enforcement investigations or prosecutions."  *Pub. Emps. for Envtl. Responsibility v. U.S. Section Int'l Boundary & Water Comm'n*, No. 11-cv-261, 2012 WL 933709, at *16 (D.D.C. Mar. 20, 2012) (citing *Showing*

20

*Animals Respect and Kindness v. U.S. Dep't of Interior,* 730 F. Supp. 2d 180, 199-200 (D.D.C. 2010)).

"Notwithstanding the categorical protection to law enforcement techniques and procedures afforded under the first clause of Exemption 7(E), *see Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010) ("The sentence structure of Exemption (b)(7)(E) indicates that the qualifying phrase ('if such disclosure could reasonably be expected to risk circumvention of the law') modifies only 'guidelines' and not 'techniques and procedures.'"), no agency can rely on a declaration written in vague terms or in a conclusory manner.  *Davis v. FBI*, 770 F. Supp. 2d 93, 100 (D.D.C. 2011) (concluding that declaration's "generic description of the documents as "prosecution memoranda . . . detailing evidence gathering efforts and prosecution strategies in [plaintiff's] criminal case" did not explain adequately the agency's decision to withhold information under Exemption 7(E)).  Here, the FBI withholds "procedures and techniques used by FBI agents to conduct criminal investigations," the disclosure of which "could enable subjects of FBI investigations to circumvent similar currently used techniques and procedures by law enforcement."  Hardy Decl. ¶ 62.  "To convince the Court that the information withheld is subject to the exemption, the FBI cannot rely upon the vaguely worded categorical description it has provided," and must instead "provide evidence from which the Court can deduce something of the nature of the techniques in question."  *Clemente v. FBI*, 741 F. Supp. 2d 64, 88 (D.D.C. 2010).

## III.  CONCLUSION

Defendants have shown that the FBI has conducted a reasonable search for records responsive to plaintiff's FOIA request and that it properly withholds records under Exemptions

7(C) and 7(D) with respect to sources who provided information to the FBI under implied and express assurances of confidentiality.  In these respects, defendants' motion will be granted in part.  However, defendants have not demonstrated compliance with the FOIA by the EOUSA and the BOP, and have not shown that the FBI properly withholds information under Exemptions 5, 7(D) (with respect to local grand jury testimony), and 7(E).  In these respects, defendants' motion for summary judgment will be denied in part without prejudice.  The Court defers its determination on segregability.  Defendants may file a renewed motion for summary judgment based on additional undisputed facts or by providing additional legal arguments.  An Order accompanies this Memorandum Opinion.  An Order accompanies this Memorandum Opinion.

Signed:        EMMET G. SULLIVAN
               United States District Judge

Dated:         March 2, 2013